IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINE SYSTEMS, INC | : | CIVIL ACTION |
| | : | NO. 11-6527 |
| v. | : | |
| | : | |
| SPRINT NEXTEL CORPORATION | : | |

O'NEILL, J.                                                                                            JULY 24, 2012

## MEMORANDUM

Whenever a Sprint cellular telephone customer calls a Line Systems customer's telephone number, Line Systems provides a service by completing the call.  Line Systems has charged Sprint for completing Sprint-originated calls but Sprint hasn't paid.  Line Systems now sues to recover payments and Sprint moves to dismiss for failure to state a claim.  For the following reasons I will grant in part and deny in part Sprint's motion.

## BACKGROUND

Line Systems alleges the following facts.  Line Systems is a competitive local exchange carrier that operates in Pennsylvania, Delaware, Maryland, New Jersey and New York.  Compl. ¶ 5.  Sprint is a commercial mobile radio service provider, or in everyday parlance, a provider of cellular telephone service.  Id. ¶ 6.  Sprint offers service across the United States, which the Federal Communications Commission has divided into fifty-one "Major Trading Areas."  Id. ¶ 13.  In the territory where Line Systems operates, most states have more than one MTA within their borders.  Id.  Calls from Sprint customers to Line Systems customers fall into one of three categories:  those that begin and end within the same MTA ("intraMTA"), those that begin and end in the same state but different MTAs ("intrastate interMTA") and those that begin and end in different states and different MTAs ("interstate interMTA").  Id. ¶ 14.

The law requires Line Systems to "terminate," or complete, calls to its customers and Line Systems has terminated more than 26 million minutes of calls originating from Sprint customers since January 2007.  Id. ¶¶ 1, 11.  Plaintiff incurs costs for providing termination services and it has billed Sprint access charges for calls by defendant's customers.  Id. ¶¶ 1, 12.  Sprint, however, refuses to pay.  Id. ¶ 1.  In the present suit Line Systems seeks payment only for Sprint's interMTA calls.  Id. ¶ 15.  Line System charges for interMTA calls pursuant to tariffs that it has filed at the FCC (for interstate interMTA calls) and at state public utility commissions (for intrastate interMTA calls).  Id.  As of August 31, 2011, Sprint was past due on $240,558.88 in access charges for interMTA calls.  Id. ¶ 24.  That amount increases as Line Systems continues to terminate calls from Sprint customers.  Id.

Line Systems asserts claims for breach of federal and state tariffs, violations of the Telecommunications Act of 1996, unjust enrichment and account stated.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  The complaint must state "'enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662, (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

**DISCUSSION**

I.   Breach of Tariff Claims

According to Sprint, the Complaint fails to state a claim for breach of tariff because the Telecommunications Act of 1996 prohibits the tariff-based access charges for which Line

3

Systems demands payment.  According to Line Systems, the Act requires tariff-based charges.  The resolution of Sprint's motion to dismiss the breach of tariff claims therefore hinges on my interpretation of the Act.

Two provisions of the Act are especially pertinent.  The first requires local exchange carriers, such as Line Systems, to "to establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5).  The parties agree that they have not reached a "reciprocal compensation arrangement."  Rather, Line Systems' charges are based on its tariffs.  Whether Line Systems may collect payments from Sprint pursuant to tariffs depends on the second key provision of the Act, 47 U.S.C. § 251(g), entitled "Continued enforcement of exchange access and interconnection requirements."  It provides:

> On and after February 8, 1996, each local exchange carrier, to the extent that it provides wireline services, shall provide exchange access, information access, and exchange services for such access to interexchange carriers and information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediately preceding February 8, 1996 under any court order, consent decree, or regulation, order, or policy of the Commission, until such restrictions and obligations are explicitly superseded by regulations prescribed by the Commission after February 8, 1996.  During the period beginning on February 8, 1996 and until such restrictions and obligations are so superseded, such restrictions and obligations shall be enforceable in the same manner as regulations of the Commission.

Id. § 251(g).  "Section 251(g) . . . preserved the pre-1996 Act regulatory regime that applies to access traffic, including rules governing receipt of compensation, and thereby precluded the application of section 251(b)(5) to such traffic unless and until the Commission by regulation should determine otherwise." In the Matter of Connect America Fund, 26 FCC Rcd. 17663,

17916 (2011) (internal quotation marks omitted). "Access traffic" is local and "non-access traffic" is long-distance. See In re Empire One Telecomms., Inc., 458 B.R. 692, 695 n.1 (Bankr. S.D.N.Y. 2011). Accordingly, § 251(g) provides for the continued use of tariff-based charges for long-distance calls.

Either § 251(b)(5) or § 251(g) applies to Line Systems' termination services and the parties point to no other statutory provision that could govern their relationship. Sprint and Line Systems agree that if § 251(g) applies, Line Systems may charge Sprint pursuant to tariffs, despite the command in § 251(b)(5) that local exchange carriers establish reciprocal compensation agreements. If § 251(b)(5) applies, Line Systems may not charge tariff-based access charges and instead must establish a reciprocal compensation agreement with Sprint. The parties' main dispute is whether § 251(g) or § 251(b)(5) governs the calls at issue in this case.

      A.      Whether Line Systems Provides "Exchange Access"

According to Sprint, § 251(g) cannot apply to calls originating from Sprint customers because Line Systems does not provide "exchange access," as that term is used in § 251(g), to calls by defendants' customers. Sprint's argument is based on a sequence of defined terms in the Act. "Exchange access" is "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services." 47 U.S.C. § 153(20). "Telephone toll service" is "telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service." Id. § 153(55). Sprint argues that Line Systems has failed to allege that Sprint charges any separate charge for long-distance calls. Furthermore, Sprint represents that it "does not charge an extra fee to the vast majority of its customers for calling a long distance number." Dkt.

No. 18 at 10.  Accordingly, defendant avers that it does not provide "telephone toll service," which means that calls from Sprint customers do not involve "exchange access" and that Line Systems cannot charge Sprint pursuant to § 251(g).

The Court of Appeals for the Second Circuit rejected a similar argument in a case that presented slightly different factual circumstances.  At issue was whether a local exchange carrier had to pay access charges to another local exchange carrier.  The carrier seeking to avoid payment argued that it should not have to pay access charges because it does not impose on its customers any "separate charges."  The Court summarized the carrier's argument as follows:

> [The carrier] centers its argument on the "separate charge" language in the statutory definition of "telephone toll services" (which in turn defines exchange access, which in turn determines whether access charges apply).  [The carrier] reasons that, since the regulations prescribe that a charge separate from the applicable service contracts is necessary to make a call a "toll" call and since [the carrier] imposes no separate toll charges, its traffic is not subject to access fees . . . .

Global NAPs, Inc. v. Verizon New Eng., Inc., 454 F.3d 91, 98 (2d Cir. 2006).  The Court rejected this argument, reasoning that it "attributes far too much significance to the term 'separate charge.'"  Id.  It explained that

> [i]t seems likely that the "separate charge" language in the statute was written to underscore that "tolls" applied exclusively to long-distance service and were charged separately.  But what really mattered in determining whether an access charge was appropriate was whether a call traversed local exchanges, not how a carrier chose to bill its customers.

Id.  In sum, the Court rejected the carrier's argument that its billing practices determined whether it involved "exchange access" and was therefore subject to access charges.  What mattered instead was the nature of the underlying call.

Here, Sprint argues that its decision not to charge its customers separate fees means that Line Systems does not provide Sprint "exchange access." I do not find this argument persuasive for the same reasons the Global NAPs Court rejected a similar argument. Sprint's billing methods are, in the words of that Court, "beside the point." Id. The type of phone call, not Sprint's approach to charging its customers, controls.

As the Court in Global NAPs noted, the key consideration is "whether a call traversed local exchanges." Id. Unfortunately, "[t]raditional notions of 'local exchange areas' do not fit neatly into this new world of wireless communications." Iowa Network Servs. v. Qwest Corp., 363 F.3d 683, 687 (8th Cir. 2004). In light of this somewhat uneasy fit between the text of the Act and modern cellular communications, I find the Act ambiguous as it applies to the calls at issue in this case. Pursuant to Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), I must "defer to an agency's reasonable interpretation of any ambiguities in a statute which it administers." Time Warner Telecom, Inc. v. Fed. Commc'ns Comm'n, 507 F.3d 205, 214 (3d Cir. 2007).

The FCC has recognized that communications through commercial mobile radio service providers involve different technology and determined that MTAs "serve[] as the most appropriate definition for local service area for CMRS traffic." In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 11 FCC Rcd. 15499, 16014 (1996) ("Local Competition Order"); see also Empire One, 458 B.R. at 695 n.1 ("Since CMRS ('cellular') carriers . . . transmit their calls via radio waves rather than over exchanges, the relevant geographical areas for classifying calls as essentially 'local' or 'long-distance' are MTAs."). "Accordingly, traffic to or from a CMRS network that originates

and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges." Local Competition Order, 11 FCC Rcd. at 16014.

The FCC has codified this distinction between interMTA and intraMTA calls in its regulations, which provide that reciprocal compensation applies to "[t]elecommunications traffic exchanged between a [local exchange carrier] and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area." 47 C.F.R. § 51.701(b)(2). The FCC's distinction between interMTA and intraMTA calls is reasonable and therefore I defer to the FCC's interpretation of the Act pursuant to Chevron. Accordingly, intraMTA calls are subject to reciprocal compensation under § 251(b)(5). InterMTA calls, like the ones at issue in this case, are subject to tariff-based access charges pursuant to § 251(g). See Atlas Tel. Co. v. Okla. Corp. Comm'n, 400 F.3d 1256, 1264 (10th Cir. 2005) (noting that 47 C.F.R. § 51.701(b)(2) "narrows" a local exchange carrier's obligation to establish reciprocal compensation agreements by limiting reciprocal compensation to traffic that begins and ends in the same MTA); Verizon Wireless (VAW) LLC v. Sahr, 457 F. Supp. 2d 940, 951 (D.S.D. 2006) (explaining that "intraMTA calls are local calls, whether intrastate or interstate, and are subject to reciprocal compensation" and that "[i]nterMTA calls are non-local calls, whether intrastate or interstate, and are subject to access charges").

The conclusion that interMTA calls are subject to access charges is consistent with 47 C.F.R. § 20.11(d), which provides that "[l]ocal exchange carriers may not impose compensation obligations for traffic not subject to access charges upon commercial mobile radio service providers pursuant to tariffs." Sprint argues that its calls are not subject to access charges and

therefore may not be tariffed.  I have concluded, however, that Sprint's interMTA calls are subject to access charges.  Accordingly, § 20.11(d) does not prohibit Line Systems' tariff-based charges for interMTA calls.

      B.      Whether Sprint is an "Interexchange Carrier"

Sprint also makes a separate definitional argument, which is that it is not an "interexchange carrier" as that term is used in § 251(g)'s command that local exchange carriers provide "exchange services . . . to interexchange carriers."  The Act does not define the term "interexchange carrier" but Sprint argues that the term refers to a "traditional long distance authority."  Sprint avers that it provides commercial mobile radio services and is not an interexchange carrier.  Some authority supports Sprint's position.  See Nat'l Cable & Telecomms. Ass'n v. F.C.C., 555 F.3d 996, 998 (D.C. Cir. 2009) (noting that in a 1998 order the FCC made "a distinction between three traditional categories of telecommunications services: local telephone service, interexchange (primarily long distance calling service), and commercial mobile radio services (primarily mobile or cellular phone service)").  If Sprint is not an "interexchange carrier," then Line Systems' services to Sprint cannot fall within the scope of § 251(g).

Sprint, however, concedes in its motion to dismiss that a local exchange carrier may impose access charges "in situations where cell phone companies like Sprint do charge a separate fee for long distance calls."  Dkt. No. 18 at 12.  Sprint therefore acknowledges that a cellular provider can act as an interexchange carrier as that term is used in § 251(g); otherwise an access charge would never be permissible.  Sprint apparently believes that its status as an "interexchange carrier" depends on whether it charges its customers a separate fee for long

distance calls.  I reject this argument for the same reasons I rejected Sprint's argument that its billing practices determine whether its calls involve "exchange access."

At least one other court has determined that a cellular provider acts as an interexchange carrier on non-local calls.  See Union Tel. Co. v. Pub. Serv. Comm'n of Utah, No. 2:08CV495DAK, 2009 WL 2019062, at * 3 n.3 (D. Utah July 6, 2009) ("When [the cellular provider] acts as the carrier on a non-local call, it is acting as an [interexchange carrier] and is responsible to pay a landline carrier . . . for terminating access.").  I therefore conclude that Sprint acts as an interexchange carrier for the purpose of § 251(g).

In sum, Line Systems may impose tariff-based access charges pursuant to § 251(g).  I will therefore deny Sprint's motion to dismiss Line Systems' breach of tariff claims.

II.     Claim for Violation of 47 U.S.C. § 201

Line Systems seeks damages that exceed the unpaid access charges and brings claims in addition to its claims for breach of tariff.  Plaintiff brings a claim under 47 U.S.C. § 201(b), which provides that "[a]ll charges, practices, classifications, and regulations for and in connection with . . . communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b).  The sole basis for Line Systems' § 201 claim is Sprint's alleged failure to pay access charges.  Compl. ¶ 36.

The FCC, however, has explained that "although a customer-carrier's failure to pay another carrier's tariffed charges may give rise to a claim in court for breach of tariff/contract, it does not give rise to a claim . . . for breach of the Act itself."  In the Matter of All American Telephone Co. v. AT&T Corp., 26 FCC Rcd. 723, 727 (2011).  Line Systems acknowledges this

principle but argues in its opposition to Sprint's motion to dismiss that the Complaint alleges other unjust and unreasonable conduct that could support a claim under § 201. Line Systems' claim for violation of § 201, however, does not allege that any conduct other than non-payment of tariffs violated § 201. I will therefore grant Sprint's motion to dismiss the § 201 claim. I will grant Line Systems leave to amend this claim because amendment would not be futile. See Free Speech Coal., Inc. v. Attorney Gen. of the U.S., 677 F.3d 519, 545 (3d Cir. 2012) ("Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile.").

III.    Claim for Violation of 47 U.S.C. § 203

Line Systems also brings a claim under 47 U.S.C. § 203, which requires carriers to file tariffs with the FCC and provides that "no carrier shall . . . charge, demand, collect, or receive a greater or less or different compensation for such communication, . . . than [the charges specified under the filed tariffs]." 47 U.S.C. § 203(c). Line Systems avers that Sprint has refused to pay tariffs, thereby "'demanding' and 'receiving' a rate less than the tariffed rate." Compl. ¶ 43. Sprint moves to dismiss this claim on the ground that the failure to pay tariffed charges does not give rise to a claim under the Act. I agree and will grant Sprint's motion to dismiss this claim. Furthermore, I will not grant Line Systems leave to amend this claim. Section 203(c) makes it unlawful for a carrier to "charge, demand, collect, or receive" "compensation" that differs from the charges allowed by the tariffs. This case does not involve any attempt by Sprint to "charge, demand, collect or receive" any compensation. Rather, the case involves Sprint's alleged failure to compensate Line Systems. Amendment of the § 203 claim would therefore be futile.

IV.    Claims for Unjust Enrichment and Account Stated

Sprint moves to dismiss Line Systems' claims of "unjust enrichment, quantum meruit and/or implied contract" and account stated on the ground that these claims are preempted by federal law. Sprint relies on Union Telephone Co. v. Qwest Corp., 495 F.3d 1187 (10th Cir. 2007), which concluded that "federal law requires [Union and Qwest] . . . to set rates through interconnection agreements" pursuant to 47 U.S.C. § 252. Union Tel., 495 F.3d at 1197. The Court then reasoned that "allowing Union to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism." Id. In the present matter, however, there has been no determination that the parties have an obligation under federal law to establish interconnection agreements. Union Telephone is therefore inapposite and I will deny this portion of Sprint's motion.[1]

Additionally, Sprint moves to dismiss the account stated claim on the ground that it has not accepted Line Systems' account. "An account stated is an account in writing, examined, and expressly or impliedly accepted by both parties thereto." Braverman Kaskey, P.C. v. Toidze, No. 09-3470, 2011 WL 4851069, at *4 (E.D. Pa. Oct. 12, 2011). An allegation that a defendant "never contested its bills is not sufficient to show acquiescence in the correctness of the account." Id. Accordingly, Line Systems' allegation that Sprint "accepted and retained . . . statements of account without dispute," Compl. ¶ 62, does not support its claim for account

---

[1]    I note that the filed rate doctrine might bar Line Systems' unjust enrichment claim. See Sancom, Inc. v. Qwest Commc'ns Corp., 643 F. Supp. 2d 1117, 1125-26 (D.S.D. 2009) ("Where the services in question are covered by the applicable tariff, the filed rate doctrine bars any request for damages pursuant to the doctrine of unjust enrichment."). I will not decide the issue at this stage without the benefit of a developed factual record and the parties' arguments.

stated.  I will therefore dismiss the account stated claim.

An appropriate Order follows.